UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHARITY TONEY and ROBERT GRIMES,** individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**B&G FOODS, INC. and B&G FOODS SNACKS, INC.,**<br><br>Defendants. | Case No. 2:19cv14131-JMV-JAD |

# FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiffs, CHARITY TONEY and ROBERT GRIMES, individually and on behalf of all others similarly situated, by and through their attorneys BROWN, LLC, hereby bring this First Amended Collective and Class Action Complaint against Defendants B&G FOODS, INC. and B&G FOODS SNACKS, INC. and state as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, CHARITY TONEY and ROBERT GRIMES, (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendants B&G FOODS, INC. and B&G FOODS SNACKS, INC. (hereinafter referred to as "Defendants"), arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.*, and Defendants' breach of their contractual obligation to pay Plaintiffs and other hourly-paid production line workers for all hours worked.

2. Defendants "manufacture[], sell[], and distribute[] a portfolio of shelf-stable and

frozen foods in the United States, Canada, and Puerto Rico."[1] Defendants sell and distribute their products directly, as well as through a network of independent brokers and distributors to supermarket chains, food service outlets, mass merchants, warehouse clubs, non-food outlets, and specialty distributors.

3. Plaintiffs and similarly situated hourly-paid production line workers employed by Defendants were victims of Defendants' common unlawful policy of failing to pay hourly-paid production line workers for hours worked before and/or after their shifts, including hours in excess of 40 in a workweek in violation of the FLSA and North Carolina Wage and Hour Act.

4. Plaintiffs bring this collective and class action pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated hourly paid production line workers employed by Defendants in the applicable time period, and seek unpaid wages and overtime wages, in addition to liquidated damages, fees and costs, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

6. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

7. The Court has personal jurisdiction over Defendants because at all relevant times Defendants have been headquartered in Parsippany, New Jersey.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (c) and (d) because

---

[1] See Defendant B&G Foods, Inc.'s Bloomberg Private Company Profile: https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=6631173 (last accessed May 3, 2019).

2

the Defendants are subject to personal jurisdiction in this District.

## PARTIES

9. Plaintiff CHARITY TONEY is a resident of Mocksville, North Carolina.

10. Plaintiff Toney worked for Defendants from approximately October 2017 through approximately February 21, 2019 in Yadkinville, North Carolina.

11. Plaintiff Toney signed a consent form to join this lawsuit, which is attached as *Exhibit 1*.

12. Plaintiff ROBERT GRIMES is a resident of Mocksville, North Carolina.

13. Plaintiff Grimes worked for Defendants from approximately March 2017 through approximately June 2019 in Yadkinville, North Carolina.

14. Plaintiff Grimes signed a consent form to join this lawsuit, which is attached as *Exhibit 2*.

15. Defendants are for-profit corporations headquartered in Parsippany, New Jersey.

16. Defendants B&G Foods, Inc. was formerly known as B&G Foods Holdings Corp. and changed its name to B&G Foods, Inc. in October 2004. B&G Foods, Inc. was founded in 1996. It is headquartered in Parsippany, New Jersey.

17. Defendant B&G FOODS SNACKS, INC. maintains its principle office at 4 Gatehall Drive, Parsippany, NJ 07054-4518.

## FACTUAL ALLEGATIONS

**FLSA Coverage**

18. The FLSA applies in this case on an enterprise basis.

19. Defendants are an enterprise whose annual gross volume of sales made or business done exceeds $500,000.

20. Defendants are an enterprise that has employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

21. Defendants have employed hourly-paid production line workers at most, if not all, of their manufacturing locations.

22. Plaintiffs' and other hourly-paid production line workers' job duties have included producing foods and packaging for Defendants, among other duties.

23. Defendants have classified Plaintiffs and other similarly situated hourly-paid production line workers as hourly-paid, non-exempt employees, and have not guaranteed them any minimum weekly salaries.

24. Plaintiffs and other similarly situated hourly-paid production line workers work full-time schedules which regularly include hours in excess of forty (40) in a workweek.

25. Defendants maintained a company-wide policy of not paying Plaintiffs and other hourly-paid production line workers for time spent working before and/or after the end of their shifts, such as post-shift time spent working at their stations until the next production line worker arrived to replace them on the line.

26. The uncompensated time Plaintiffs and other hourly-paid production line workers spent working before and/or after the end of their shifts would have resulted in overtime pay if compensated.

27. Defendants knew that Plaintiffs and other hourly-paid production line workers were spending compensable time working pre and post shift without receiving pay, but failed to compensate them for such time.

**Plaintiff Charity Toney's Employment**

28. Plaintiff CHARITY TONEY began working for Defendants as an hourly-paid production line worker in approximately October 2017 and continued working in that position until approximately February 21, 2019.

29. Throughout her employment with Defendants, Plaintiff Toney worked in Defendants' Yadkinville, North Carolina location.

30. Defendants directly supervised Plaintiff Toney and determined her work schedules, hours, and conditions of employment.

31. As an hourly-paid production line worker, Plaintiff Toney's duties included manufacturing pizza boxes on a line and sometimes training other employees, among other duties.

32. As an hourly-paid production line worker, Plaintiff Toney received an hourly rate of $11.50 per hour.

33. As an hourly-paid production line worker, Plaintiff Toney typically was scheduled for forty (40) hours per week, which consisted of five (5) shifts or occasionally more of approximately eight (8) hours each.

34. As a production line worker, there were shifts in which Plaintiff Toney was required to arrive approximately 30 minutes prior to the start of her shift to train other employees as a "mentor."

35. As a production line worker, there were shifts in which Plaintiff Toney was required to continue working on the line after the end of her scheduled shift until the next production line worker arrived to replace her.

36. As a result of performing unpaid work before and after her shift, Plaintiff Toney frequently worked over forty (40) hours per week.

37. Throughout her employment with Defendants, there were many weeks in which Plaintiff Toney worked hours in excess of forty (40) in a workweek for which she did not receive compensation at time-and-a-half of her regular rate of pay.

**Plaintiff Robert Grimes' Employment**

38. Plaintiff ROBERT GRIMES began working for Defendants as an hourly-paid production line worker in approximately March 2017 and continued working in that position through approximately June 2019.

39. Throughout his employment with Defendants, Plaintiff Grimes worked in Defendants' Yadkinville, North Carolina location.

40. Defendants directly supervised Plaintiff Grimes and determined his work schedules, hours, and conditions of employment.

41. As a production line worker, Plaintiff Grimes' duties included manufacturing pizza boxes and mixing pita dough on a line, among other duties.

42. As a production line worker, Plaintiff Grimes received an hourly rate of approximately $9.50 per hour from 2017 to 2018 and approximately $12 per hour from 2018 through the end of his employment with Defendants.

43. As an hourly-paid production line worker, Plaintiff Grimes typically was scheduled for forty (40) hours per week or more, which consisted of five (5) to seven (7) shifts of approximately eight (8) hours each.

44. As an hourly-paid production line worker, there were shifts in which Plaintiff Grimes was required to arrive before the start of his shift to prepare his equipment.

45. As an hourly-paid production line worker, there were shifts in which Plaintiff Grimes was required to continue working on the line after the end of his scheduled shift until the

next production line worker arrived to replace him.

46. Plaintiff Grimes frequently worked over forty (40) hours per week.

47. As a result of performing unpaid work before and after his shift, there were many weeks throughout Plaintiff Grimes' employment with Defendants in which Plaintiff worked hours in excess of forty (40) in a workweek for which he did not receive compensation at time-and-a-half of his regular rate of pay.

**COLLECTIVE ACTION ALLEGATIONS**

48. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *Any individual who worked for Defendants as an hourly-paid production line workers at any time within the period of the three (3) years prior to the commencement of this action through the date of judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition as necessary.

49. With respect to the claims set herein, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

50. The employment relationships between Defendants and every FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every FLSA Collective member, such as:

    a. Whether the FLSA Collective members spent time working

pre-shift;

  b. Whether the FLSA Collective members spent time working post-shift;

  c. Whether Defendants maintained a policy or practice of failing to pay FLSA Collective members for time spent working before and/or after their shifts;

  d. Whether Defendants failed to pay FLSA Collective members for time working pre or post shift;

  e. Whether Defendants failed to pay FLSA Collective members time and a half for all hours they worked over 40 in a workweek.

  f. Whether Defendants' violations of the FLSA were willful and/or in good faith.

51. Plaintiffs estimate the FLSA Collective, including both current and former employees over the relevant period, will include several hundred members. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

52. Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *Any individual who worked for Defendants as an hourly-paid production line worker in North Carolina at any time within the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend this definition as necessary.

53. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate that there are several hundred Class members. Rule 23 Class members should be easy to identify from

Defendants' computer systems and electronic payroll and personnel records.

54. There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

   a. Whether Rule 23 Class members spent time working pre-shift;

   b. Whether Rule 23 Class members spent time working post-shift;

   c. Whether Defendants maintained a policy or practice of failing to pay FLSA Collective members for time spent before and/or after their shifts;

   d. Whether Defendants contractually agreed to pay Rule 23 Class members for all hours worked;

   e. Whether Defendants failed to pay Rule 23 Class members for time worked outside of their scheduled shifts;

   f. Whether Defendants failed to pay Rule 23 Class members time and a half for all hours worked over 40 in a workweek;

   g. Whether Defendants' violations of the North Carolina Wage and Hour Act were willful and/or in good faith.

55. Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

56. Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage

and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

57. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

58. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

59. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

60. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
<u>**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201,** *et seq*.</u>
<u>**FAILURE TO PAY OVERTIME**</u>

61. Plaintiffs re-allege and incorporate all previous paragraphs herein.

62. 29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

63. 29 CFR § 785.18 provides, in part:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

64. 29 CFR § 785.19(a) provides, in part:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

65. Plaintiffs and other FLSA Collective Members worked many workweeks in excess of 40 hours within the last three years.

66. At all times relevant to this action, Defendants failed to pay Plaintiffs and other FLSA Collective members the federally mandated rate of 1.5 times the regular rate of pay for all hours worked in excess of 40 in a workweek.

67. In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, they should have been paid at the federally mandated rate of 1.5 times of each employee's regular rate of pay, but were not.

68. Defendants' failure to pay Plaintiffs and other FLSA Collective members overtime wages was knowing and willful. Defendants knew that their policies resulted in Plaintiffs and FLSA Collective members not being paid for time spent working outside of their scheduled shift, and Defendants could have properly compensated them for such work, but did not. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years….").

69. Defendants' failure to pay Plaintiffs and other FLSA Collective members overtime was not done in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement policy of such departments.

70. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

71. Defendants are in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

**COUNT II**
**(Rule 23 Class Action)**
**Violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6**
**FAILURE TO PAY WAGES**

72. Plaintiffs re-allege and incorporate all previous paragraphs herein.

73. Plaintiffs and Rule 23 Class members were employed by Defendants within the meaning of the North Carolina Wage and Hour Act, and were not exempt from the statute's requirements.

74. N.C. Gen. Stat. § 95-25.6 has provided:

> Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly.

75. At all times relevant to this action, Defendants maintained contracts with Plaintiffs and every other Rule 23 Class member which required them to pay each employee for each hour they worked at his or her contractual hourly rate as provided therein.

76. Plaintiffs and every other Rule 23 Class member performed under the contract by doing their jobs and carrying out pre and post-shift activities that Defendants required or accepted, and thus wages were "accruing" to them within the meaning of 63. N.C. Gen. Stat. § 95-25.6.

77. Defendants violated N.C. Gen. Stat. § 95-25.6 by failing to pay Plaintiffs and other Rule 23 Class members wages accrued from time spent working outside of their scheduled shift.

78. As a result of Defendants' violations of the North Carolina Wage and Hour Act, Plaintiffs and the Rule 23 Class members are entitled to recover unpaid wages dating two (2) years back, *see* N.C. Gen. Stat. § 95-25.22(f), plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to N.C. Gen. Stat. § 95-25.22.

**COUNT III**
**(Rule 23 Class Action)**
**North Carolina Common Law**
**BREACH OF CONTRACT**

79. Plaintiffs re-allege and incorporate all previous paragraphs herein.

80. At all times relevant to this action, Defendants maintained contracts with Plaintiffs and every other Rule 23 Class member which required them to pay each employee for each hour

13

they worked at his or her contractual hourly rate as provided therein.

81. Plaintiffs and every other Rule 23 Class member performed under the contract by doing their jobs and carrying out pre and post-shift activities that Defendants required or accepted.

82. By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for time spent working outside of their scheduled shifts, Defendants systematically breached their contracts with Plaintiffs and each member of the Rule 23 Class.

83. Plaintiffs' and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., "gap time" claims).

84. As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Class have been damaged, in an amount to be determined at trial.

85. Defendants are in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, Charity Toney and Robert Grimes, request an entry of an Order the following relief:

    a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA overtime claims set forth herein (Count I);

    b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Counts II and III);

    c. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and

addresses of all FLSA Collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiffs as the representatives of the Rule 23 Class and undersigned counsel as Class counsel for the same;

e. Declaring Defendants willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendants violated North Carolina Wage and Hour Act and that said violations were intentional, willfully oppressive, fraudulent and malicious;

g. Declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Class by failing to pay them for each hour they worked at a contractual hourly rate;

h. Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the FLSA Collective and the Rule 23 Class, the full amount of damages and liquidated damages available by law;

i. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in this action as provided by statute;

j. Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, Charity Toney and Robert Grimes, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled claims.

Respectfully Submitted,

Dated: August 28, 2019

By: /s Jason T. Brown
Jason T. Brown
Nicholas Conlon
Lotus Cannon (pro hac vice pending)
BROWN, LLC
111 Town Square Pl Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
lotus.cannon@jtblawgroup.com

*Counsel for Plaintiffs*